

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street, 3rd Floor*
*New York, New York 10007*

May 9, 2022

<u>By ECF and Email</u>
(CronanNYSDChambers@nysd.uscourts.gov)
Hon. John P. Cronan
500 Pearl Street
New York, NY 10007

     Re: *W.P.V. and W.P.O. v. United States, et al.*, No. 21 Civ. 4436 (JPC)

Dear Judge Cronan:

     This Office represents Defendant the United States ("Defendant" or the "Government") in the above-referenced case, which Plaintiffs bring pursuant to the Federal Tort Claims Act ("FTCA"). Defendant writes pursuant to the Court's individual rules to respectfully request a pre-motion conference with respect to its anticipated motion to transfer and/or dismiss Plaintiffs' Complaint.

### Background

     As alleged in the Complaint, Plaintiffs—a father (WPV) and son (WPO)—crossed the border between ports of entry in May of 2018 near El Paso, Texas. Complaint ("Cmpl.") at ¶ 51. After being apprehended by border patrol officers, they were taken into custody. Shortly thereafter, WPV was separated from his son and taken to federal prison for illegally crossing the border. *Id*. at ¶ 66. Over the next several weeks, WPV was transported between various detention facilities in Texas and New Mexico. *Id*. at ¶ 75. He was ultimately deported to Honduras on July 11, 2018. *Id*. at ¶ 80.

     As to WPO, the Complaint alleges that after being separated from WPV, he was transported between several facilities, but ultimately was sent to Cayuga Centers in the Bronx on May 26, 2018.[1] *Id*. at ¶ 82. As stated in the Complaint, Cayuga Centers is a child "welfare agency" that houses children, including children who came across the border illegally and are "unaccompanied minors." *Id*. at ¶¶ 83, 87. On June 29, 2018, WPO was discharged from Cayuga Centers and went to live with his uncle in Texas. *Id*. at ¶¶ 96-97.

     As Plaintiffs indicate, WPV committed a crime by illegally entering the country. When he was apprehended, he was with his minor child. The Government then separated WPV and his child because it determined that, in light of WPV's crime, he was to be prosecuted.

     Plaintiffs seek to sue the Government for prosecuting an individual who committed a crime and refusing to send that person's child to a secure detention facility with him. As explained

---

[1] Plaintiffs also name Cayuga Centers as a defendant in this action.

below, the Government retains discretion to enforce criminal laws and doing so for the purpose of deterring future illegal activity does not make these enforcement decisions illegal. Indeed, one of the pillars of prosecution (and a court's sentencing) is general deterrence. *Cf.*, 18 U.S. Code § 3553(a)(2)(B) ("The court, in determining the particular sentence to be imposed, shall consider . . . adequate deterrence to criminal conduct.").

Based upon the above facts, Plaintiffs bring two claims against the Government— "intentional infliction of emotional distress" and "negligence." *See* Cmpl. at ¶¶ 133-141. The United States has denounced the prior practice of separating children from their families at the United States–Mexico border and "condemn[ed] the human tragedy" that occurred because of the Zero-Tolerance Policy. *See* Establishment of Interagency Task Force on the Reunification of Families, Exec. Order 14,011, § 1, 86 Fed. Reg. 8273, 8273 (Feb. 5, 2021). The Biden Administration has committed the federal government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law." *Id*. That said, the Court should not reach the merits of Plaintiffs' FTCA claims because this forum is not the appropriate venue for this dispute and because the prior practices represented exercises of discretion that—even if the "discretion [was] abused"—do not give rise to liability under 28 U.S.C. § 2680(a). Therefore, as discussed more fully below, Defendant intends to file a motion to transfer this action to the Western District of Texas in light of the fact that the events giving rise to the claims occurred there. In the alternative, Defendant intends to move to dismiss.

## Motion to Transfer

In deciding a motion to transfer venue, courts engage in a two-part inquiry. *See Burgos v. United States*, No. 16-cv-7091 (RA), 2017 WL 2799172, at *2 (S.D.N.Y. June 27, 2017). "First, the court must determine whether the action could have been brought in the proposed transferee forum." *Id.* (internal citation and quotation marks omitted). "Second, the court must . . . determine whether transfer is appropriate." *Id.* (internal citation and quotation marks omitted). In determining whether transfer is appropriate, courts in this District consider the following factors:

> (1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.

*Id*. (internal citation omitted).[2]

---

[2] Here, there can be no dispute that this action could have been filed in the United States District Court for the Western District of Texas. The Government can be sued for FTCA claims "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Plaintiffs complain of actions that the Government took when they entered the United States near El Paso, Texas (in the Western District of Texas), and

Here, Plaintiffs illegally crossed the border in Texas, were initially detained in Texas, and were in Texas when they were separated. WPV was never present in New York—rather, he was transported between facilities in Texas and New Mexico. The only tie to New York is that WPO resided at Cayuga Centers (a non-federal entity) for approximately one month before being released to his family who live in Texas, where WPO currently resides. *See* Cmpl. at ¶ 19. Accordingly, the locus of operative facts is in Texas; litigating this action in Texas would be more convenient for WPO who resides in Texas; the witnesses with respect to the Plaintiffs' apprehension and separation are in Texas; Texas law will dictate whether the Government intentionally inflicted emotional distress when it separated Plaintiffs; and fixing venue in Texas would reduce any necessary expenditures by Plaintiffs given that WPO resides there.

Additionally, as the Government has informed the Court in a prior status letter, this action is one of many similar actions being litigated across the country. The Government is generally seeking to transfer these cases to the districts in which the separations occurred to promote efficiency and judicial economy.

## Motion to Dismiss

In the alternative, Defendant intends to move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction over the Complaint for several reasons. First, Plaintiffs' claims are barred by the discretionary function exception to the FTCA. Second, they are barred by the FTCA exception for actions taken while reasonably executing the law. Third, because there is no private person analog to Plaintiffs' claims, they are not cognizable under the FTCA.

### A. FTCA Exceptions

The FTCA's waiver of sovereign immunity is subject to several exceptions set forth in 28 U.S.C. § 2680, which "are designed to protect certain important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992). Section 2680(a) provides that the waiver of sovereign immunity shall not apply to "[a]ny claim [1] based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or [2] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (bracketed numerals added).

The first of these exceptions "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953). "Where government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957) (citations omitted). The exception was created because the "[FTCA] did not contemplate that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage

---

while detained in Texas. *See generally* Cmpl. ¶¶ at 51-80. As this action could have been commenced in the Western District of Texas, the Court should proceed to evaluate the relevant factors to determine if transfer is appropriate.

suit for tort.  Nor did it contemplate a remedy for damages sustained by reason of the application of invalid laws or regulations." *Id.* at 824; *see also C.P. Chem. Co. v. United States*, 810 F.2d 34, 38 (2d Cir. 1987) ("It is clear that § 2680(a) was intended to protect the validity of governmental regulations from challenge in a tort action for damages.").

As to the second exception (the discretionary function exception ("DFE")), the Court must consider two prongs to determine whether a claim is barred.  First, the Court must determine whether the act "involv[es] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal citation omitted).  Second, if the conduct does involve judgment or choice, the Court then must look to "whether that judgment is of the kind that the discretionary function exception was designed to shield."  *Id.* at 322-23.  Thus, the exception protects "governmental actions and decisions based on considerations of public policy." *Id.*

Plaintiffs illegally entered the United States and thus WPV was amenable to prosecution. *See* 8 U.S.C. § 1325.  After WPV was convicted of violating 8 U.S.C § 1325(A)(1) and was sentenced to time served, he continued to be detained for expedited removal under 8 U.S.C. § 1225(b)(1).  Prioritizing the enforcement of federal immigration law (and the resulting subsequent detention) are classic discretionary functions shieled by the FTCA's DFE.  *See Mejia-Mejia v. ICE*, 18-cv-1445, 2019 WL 4707150, *5 (D.D.C. Sept. 26, 2019) (Zero Tolerance Policy "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General").  Here, the strict enforcement of immigration laws in accordance with federal statutes rendered WPO an unaccompanied minor because WPV was unavailable "to provide care and physical custody."  6 U.S.C. § 279(g)(2); *see also* 8 U.S.C. §§ 1232(b)(1), (3). Moreover, as would be explained more fully in Defendant's motion, a nationally applicable federal consent decree prevented the Government from detaining minors in adult detention facilities. Accordingly, once it was determined that WPV would be detained pending his prosecution and/or removal, he had to be separated from WPO.  Thus, because the separation stemmed from the Government's discretionary decision to prosecute WPV in execution of its statutory authorities and the Government's subsequent actions in separating WPO were in furtherance of the exercise of its statutory authorities, Plaintiffs' claims are barred.

**B. Private Analog**

The FTCA waives the Government's sovereign immunity only if a plaintiff alleges "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2674 (FTCA allows for tort recovery against United States only "in the same manner and to the same extent as a private individual under like circumstances").  The provision is known as the "private analog" requirement and where there is no private analog to the claim at issue, the court lacks subject matter jurisdiction to hear the claim.  In evaluating whether a private analog exists, the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 46 (2005) (internal quotation marks omitted); *see also McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) ("[T]he Supreme Court has made clear that the relevant inquiry is the liability of a 'private person' under State law, not that of a state or municipal entity."). The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be

liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotation marks omitted).

As the Second Circuit has clearly stated, "[p]rivate persons cannot establish facilities to detain other persons—only the government can, either on its own or through a governmental contractor. In short, there is no circumstance in state tort law that is analogous to the situation here." *McGowan*, 825 F.3d at 127. In *McGowan*, the court determined that it lacked jurisdiction over the plaintiff's wrongful confinement claim because private persons could not "establish facilities to detain other persons." *Id*. The same reasoning applies here. WPV was lawfully detained and housed in an appropriate detention center. This power is one unique to the Government that private persons are incapable of performing and, therefore, there is no private analog in this case. *See, e.g., Ojo v. United States*, No. 16-cv-4112 (MKB) (LB), 2019 WL 3852391, at *9 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted by*, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019) (no private analog where plaintiff's FTCA claim arose from the manner of his detention, specifically in the special housing unit).

At bottom, Plaintiffs take issue with the Government's decision to strictly enforce federal immigration law, including its decision to lawfully detain WPV. The United States has not waived its sovereign immunity as to this action because decisions regarding whether to enforce federal law have no private person counterpart. *See Chen*, 854 F.2d at 626 (private analog requirement bars suits against government for actions arising from failure to enforce government regulations); *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir.1997) (decision regarding whether to take enforcement action under federal law is not conduct for which a private individual could be held liable and, thus, did not give rise to FTCA action); *Figueroa v. United States*, 739 F. Supp. 2d 138, 141 (E.D.N.Y. 2010) ("On the other hand, no private analog is necessarily stated, for example, where the FTCA claim is based only upon an alleged failure to enforce a Federal statute or government regulation."). The Government's discretionary choice to enforce federal criminal statutes resulted in WPV's lawful detention, rendering his child subject to separation. This sequence of events is not something that a private person is capable of performing.

The Government thanks the Court for its consideration of this matter.[3]

---

[3] The Government respectfully requests that the Court schedule a pre-motion conference in this matter in order for the Court to provide guidance as to the sequencing of the Government's motion to transfer and motion to dismiss. In accordance with the Court's individual rules, the Government proposes the following briefing schedule: (1) the Government's motion to be due 60 days after the pre-motion conference; (2) Plaintiffs' opposition to be due 60 days after the Government files its motion; and (3) the Government's reply to be due 14 days after the Plaintiffs file their opposition.

Respectfully,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

 /s/ Alexander J. Hogan
ALEXANDER J. HOGAN
REBECCA R. FRIEDMAN
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2799/2614
E-mail: alexander.hogan@usdoj.gov
         rebecca.friedman@usdoj.gov