UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| W.P.V., on his own behalf and on behalf of his minor child, W.P.O., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, Cayuga Home for Children, Inc. d/b/a Cayuga Centers, <br><br> Defendants. | Civil Action No. 1:21-cv-04436-JPC <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE (DKT. NO. 66)

## **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND FACTS ........................................................................................3

      A.     The Government's Family-Separation Policies ...................................................3

      B.     The Government Forcibly Separated W.P.V. and W.P.O. ....................................3

      C.     The Government Shuttled W.P.V. Around Different Detention
            Facilities Before Deporting Him to Honduras .........................................................4

      D.     The Government Sent W.P.O. to Cayuga Centers in New York ..........................4

III.   RELEVANT LEGAL STANDARD RELATING TO TRANSFER OF
      VENUE .................................................................................................................5

IV.    THE COURT SHOULD RETAIN JURISDICTION IN THIS CASE
      AND REJECT THE GOVERNMENT'S REQUEST TO TRANSFER
      VENUE TO THE WESTERN DISTRICT OF TEXAS .........................................6

      A.     Plaintiffs' Choice of Filing Suit in this District Should be Given
            Deference, Particularly When Many of the Operative Events
            Occurred in this District ..........................................................................................7

      B.     Convenience of the Parties Counsels Against a Transfer ...................................10

      C.     Relevant Witnesses Will Not Be Inconvenienced From This
            Suit Continuing in This District, and Appropriate Tools Exist to
            Obtain Testimony from Non-Party Witness Outside of New
            York ......................................................................................................................13

      D.     Location of Relevant Documents and Evidence Does Not
            Counsel Against a Transfer ...................................................................................16

      E.     Any Perceived Disparity in the Parties' Relative Means Does
            Not Warrant a Transfer .........................................................................................16

      F.     This Court is Familiar with the Governing Law ..................................................17

      G.     Trial Efficiency and the Interests of Justice Counsel Against
            Transfer ................................................................................................................18

V.     CONCLUSION....................................................................................................19

## __TABLE OF AUTHORITIES__

**Page(s)**

**Cases**

*Aerotel, Ltd. v. Sprint Corp.*,
  100 F. Supp. 2d 189 (S.D.N.Y.2000)............................................................................... *passim*

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,
  457 F. Supp. 2d 474 (S.D.N.Y. 2006)....................................................................6, 7

*Ruiz ex rel. E.R. v. United States*,
  No. 13-CV-1241 KAM SMG, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ...............14, 18

*Flood v. Carlson Rests. Inc.*,
  94 F. Supp. 3d 572 (S.D.N.Y. Mar. 27, 2015)......................................................10

*Flores v. United States*,
  142 F. Supp. 3d 279 (E.D.N.Y. 2015) ......................................................................13

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*,
  415 F. Supp. 2d 370 (S.D.N.Y. Feb. 14, 2006)........................................................12

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
  206 F. Supp. 3d 869 (S.D.N.Y. 2016)......................................................................12

*Hershman v. UnumProvident Corp.*,
  658 F. Supp. 2d 598 (S.D.N.Y. 2009)......................................................................10

*Hoffman v. Blaski*,
  363 U.S. 335 (1960)..................................................................................................5

*Hubbell-Petang v. Hotel Rsrv. Serv., Inc.*,
  No. 20 CIV. 10988 (GBD), 2022 WL 602900 (S.D.N.Y. Mar. 1, 2022) ..................7

*It's a 10, Inc. v. PH Beauty Labs, Inc.*,
  718 F. Supp. 2d 332 (S.D.N.Y. 2010).....................................................................17

*Larca v. United States*,
  No. 11 Civ. 3952 (JMF), 2012 WL 6720910 (S.D.N.Y. Dec. 16, 2012)......................9, 10, 18

*Oram v. SoulCycle LLC*,
  979 F. Supp. 2d 498 (S.D.N.Y. 2013)......................................................................11

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
  324 F. Supp. 3d 421 (S.D.N.Y. Aug. 16, 2018)........................................................15

ii

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)...................................................................................................5

**Statutes**

28 U.S.C. § 1404(a) ....................................................................................................5

Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*.................................................2, 17

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(a) ........................................................................................15

https://www.acf.hhs.gov/orr/contact-information/state-texas-programs-and-services-locality.......8

W.P.V., on his own behalf and on behalf of his minor child, W.P.O. (hereinafter, "Plaintiffs") submits this response in opposition to Defendant United States of America's (hereinafter, the "Government") motion to transfer venue.

## I.   INTRODUCTION

This case concerns the Government's months-long separation of W.P.V. and his then five-year old son, W.P.O., shortly after their arrival in the United States.   While the initial act of separation occurred in Texas, the majority of the time that the two were forcibly separated was while W.P.O was detained in New York.   The Government's motion ignores this altogether.

W.P.V. and W.P.O. were victims of the Government's cruel and unlawful policy of forcibly separating families at the United States' southern border—a policy that was adopted *for the purpose* of traumatizing and harming those children and parents.   Dkt. No. 4 at ¶ 38.   From the highest levels of the Government to the Customs and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE") officers in the field, the Government and its employees sought to inflict extreme emotional distress and other harms and intended to use the trauma of family separations to deter asylum seekers.   *Id.*   To do so, as Plaintiffs explained in their complaint, the Government's employees prosecuted W.P.V. for illegal entry under the Government's "Zero Tolerance" policy, and then used that prosecution to justify separating him from W.P.O.—something the prosecution neither required nor authorized.   The Government's employees then detained W.P.V. and W.P.O. in separate facilities thousands of miles apart, before deporting W.P.V. to Honduras while leaving W.P.O. in custody at a Government contractor's facility (Cayuga Centers) in New York for another month.   The separation caused Plaintiffs extreme emotional distress and other harms, which are articulated in further detail in the Complaint.

Seeking compensation for these harms, Plaintiffs filed the present suit against the Government under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*

Plaintiffs chose to bring their claims in the Southern District of New York ("SDNY" or "this District")—the same district to which the Government sent W.P.O. and where W.P.O. was detained thereafter.  Plaintiffs' choice of forum should be given deference.  Moreover, contrary to the Government's allegations, this District is the center of much of the relevant activity and the claims against the Government.  As part of the separation of W.P.V. and W.P.O., the Government moved W.P.O. to a facility owned and operated by Defendant Cayuga Home for Children, Inc. d/b/a Cayuga Centers (hereinafter, the "Cayuga Centers" or simply "Cayuga") in this District.[1]  In doing so, the Government targeted this District, and records and witnesses relating to W.P.O.'s detention are in this District.  The Government's motion to transfer venue thus seeks to disturb Plaintiffs' chosen forum where many of the operative events central to the Plaintiffs' claims occurred and by extension, where a significant amount of relevant evidence is located as well. Indeed, transferring the venue to the Western District of Texas, as the Government requests, would significantly inconvenience the parties as well as the relevant witnesses, many of whom are located in New York

In summary, Plaintiffs' choice to lay venue in this District is entitled significant deference and should not be disturbed here, particularly given that the interests of justice and convenience favor retaining suit in this District.  Therefore, the Government motion to transfer venue should be denied.

---

[1]    Plaintiffs note that they have reached an agreement in principle with Cayuga Centers to settle their claims against the Cayuga Centers.  Plaintiffs and the Cayuga Centers are working to finalize the terms of the settlement agreement and will notify the Court once the agreement has been finalized.

## II.     BACKGROUND FACTS

### A.     The Government's Family-Separation Policies

In April 2018, the Department of Justice instituted a "Zero Tolerance" policy that mandated prosecution of all persons who crossed the United States border between ports of entry.  Dkt. No. 4 at ¶¶ 35-36.  The purpose of the Zero Tolerance policy was to deter individuals from seeking asylum or otherwise coming to the United States.  *Id.* at ¶ 38.  The Government intended to deter immigration by forcibly separating parents and children arriving into the United States.  *Id.* Government officials knew the separation would cause enormous trauma to the children and parents.  *Id.* at ¶ 39.  Yet, the Government and its officials proceeded to enforce this policy and began separating families as they crossed over the border.  *Id.* at ¶ 37.

### B.     The Government Forcibly Separated W.P.V. and W.P.O.

W.P.V. and W.P.O. fell victims to the Government's newly-implemented family separation policy.  Around April 2018, W.P.V. started a journey from Honduras to the United States with his son, W.P.O.  *Id.* at ¶ 46.  After an arduous journey, father and son crossed the border near El Paso, Texas and surrendered themselves to officers.  *Id.* at ¶¶ 49, 51-52.  Upon surrendering, W.P.V. told the officers that his son W.P.O. was sick and requested medical attention for his son.  *Id.* at ¶ 53.  The officers ignored W.P.V.'s request and it was several hours before any medical attention was provided to W.P.O.  *Id.*

The officers placed W.P.V. and W.P.O. into a patrol car and drove them to a local office. *Id.* at ¶ 55.  The officers interviewed W.P.V. at the local office.  *Id.* at ¶ 57.  The officers then led W.P.V. and W.P.O. to a room that is referred to by asylum-seekers as a "*hielera*" ("icebox," in Spanish) because of its very cold temperatures, lack of windows and natural light, and all-hard surfaces.  *Id.* at ¶ 59.  After W.P.V. and W.P.O. had been detained in the *hielera* for about three hours, officers approached W.P.V. and informed him that he would be transported to federal prison

3

because he had committed a crime by entering the United States. *Id.* at ¶ 66. The officers proceeded to remove W.P.V. from the *hielera*—while W.P.O. was sleeping in W.P.V.'s arms. *Id.* at ¶ 67. W.P.O. did not even know that his father had been removed from the room. *Id.*

W.P.V. was distraught at the thought of being separated from his son. *Id.* at ¶ 69. W.P.V. cried as he was being transported from the *hielera* to the federal prison. *Id.* The journey to the federal prison took approximately an hour and a half, during which time, the officers refused to provide W.P.V. with any information about W.P.O. or what was going to happen to him. *Id.* W.P.V. and W.P.O. did not speak during the over two-month timeframe when both of them were in custody. *Id.* at ¶ 76.

### C. The Government Shuttled W.P.V. Around Different Detention Facilities Before Deporting Him to Honduras

After taking W.P.V. from his son, the Government detained W.P.V. in a series of public and private facilities in Texas and New Mexico. *Id.* at ¶ 75. Eventually, W.P.V. was deported to Honduras on July 11, 2018. *Id.* at ¶ 80.

### D. The Government Sent W.P.O. to Cayuga Centers in New York

After the Government had removed W.P.V. from his son, W.P.O., the Government moved W.P.O. to Cayuga Centers in Bronx, New York, which is located in the Southern District of New York. *Id.* at ¶ 82. W.P.O was held in detention in New York for over a month before he was discharged into the care of his relatives.[2] *Id.* at ¶ 89. Thus, W.P.O. was separated from his father for over a month of the two months during which they were both in custody. Said differently, a majority of the time during which W.P.O. and W.P.V. were separated, W.P.O. was detained in New York.

---

[2]     Although Plaintiffs' investigation is ongoing, it appears that W.P.O. may have also been placed in the care of another family for a portion of the time that he was detained in New York.

The Government contends that Cayuga Centers is not a detention center (Dkt. No. 67 at 12), and yet, W.P.O. was not free to leave, nor was he afforded the opportunity to communicate with his father or anyone else in his family while in custody.

Unfortunately, W.P.O's experience was not unique; hundreds of other children were suffering a similar fate in the same timeframe.  For example, in 2018, when W.P.O. was being detained at the Cayuga Center, more than 300 other children who had been separated at the border were also being forced to stay in the Cayuga Centers' New York City facilities.  Dkt. No. 4 at ¶ 85. Since 2014, Cayuga Centers has received more than $100 million in contracts from the Government for housing kids after the Government had separated them from their families at the border.  *Id.* at ¶ 86.

## III.   RELEVANT LEGAL STANDARD RELATING TO TRANSFER OF VENUE

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  When determining whether to transfer an action to another district, a court employs a two-step analysis. First, the court considers the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case.  *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960).  Once the party seeking transfer has made this showing, the court has discretion to consider motions to transfer venue based on an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

"Courts in the Second Circuit consider numerous factors in determining the balance of convenience and fairness on a motion to transfer including: (1) the locus of the operative facts; (2)

convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006).

"While courts may consider these factors, there is no rigid formula for balancing these factors and no single one of them is determinative." *Id.* "Plaintiffs' choice of forum is generally entitled to deference." *Id.* at 479. "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y.2000) (denying motion to transfer venue) (quoting *Seagoing Unif. Corp. v. Texaco, Inc.*, 705 F. Supp. 918, 936 (S.D.N.Y.1989)).

## IV. THE COURT SHOULD RETAIN JURISDICTION IN THIS CASE AND REJECT THE GOVERNMENT'S REQUEST TO TRANSFER VENUE TO THE WESTERN DISTRICT OF TEXAS

The Government admits that W.P.O. and W.P.V. were separated in May 2018, shortly after arriving in El Paso, Texas. There can also be no dispute that the separation continued for at least another month during which time the Government transferred W.P.V. to different facilities in Texas and New Mexico, while transferring W.P.O. to the custody of Government contractor, Cayuga Centers, in Bronx, New York (which is located in the Southern District of New York). On these facts alone, there can be no dispute that the Southern District of New York—where W.P.O. spent about half of his total time in the Government's custody and separated from his father, W.P.V.—is a proper venue.

Moreover, as explained below, a proper balancing of the relevant convenience and fairness factors confirms that venue should be maintained in this District. As such, the Government has

failed to meet its burden of establishing, by clear and convincing evidence, that transfer of venue is appropriate.

### A.    Plaintiffs' Choice of Filing Suit in this District Should be Given Deference, Particularly When Many of the Operative Events Occurred in this District

This Court has repeatedly held that a plaintiff's "choice of forum is generally entitled to deference." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006); *see Aerotel, Ltd.*, 100 F. Supp. 2d at 197. Here, Plaintiffs chose to file suit in the Southern District of New York and that choice should be given deference. It is, therefore, immaterial that there is another venue, such as the Western District of Texas, where Plaintiffs could have also filed their suit.

Plaintiff's chosen forum is rarely disturbed. *Aerotel, Ltd.*, 100 F. Supp. 2d at 197. The Government's request to the contrary is based on the argument that "most operative facts occurred in the Western District of Texas" and that "the primary government ***conduct giving rise to the claims here is not alleged to have occurred in New York*** …." Dkt. No. 67 at 16 (emphasis added); *id.* at 23 (arguing, based on these assertions, that Plaintiffs' choice of forum should be "afforded diminished weight"). These arguments are flawed in three material respects.

***First***, contrary to Government's argument, this Court has accorded significant weight to a plaintiff's choice of forum, even when the operative events giving rise to a cause of action occur outside the forum. *See Hubbell-Petang v. Hotel Rsrv. Serv., Inc.*, No. 20 CIV. 10988 (GBD), 2022 WL 602900, at *6 (S.D.N.Y. Mar. 1, 2022) (denying motion to transfer to the Northern District of Texas despite "the operative facts [taking] place in Texas"; reasoning that the transfer is not warranted because the moving party failed to meet its "burden of demonstrating by clear and convincing evidence that transfer is appropriate").

**Second**, the Government's argument rests on the flawed premise that the separation of W.P.V. and W.P.O. was a discrete event that occurred when they were initially separated while jointly in custody in Texas.  Dkt. No. 67 at 16 (arguing that because "the Complaint alleges no contact at all between Plaintiffs and the state of New York until **after the separation occurred**").  The separation, however, did not conclude after the Government's initial act of separation.  Rather, the Government-sponsored separation continued long after that initial act of separation, with W.P.V. being moved to different facilities in Texas and New Mexico, while W.P.O. was transferred into custody of Cayuga Centers in Bronx, New York.  Indeed, for about half of the over two-month period during which W.P.V. and W.P.O. remained in custody, W.P.O. was kept separated from his father at the Cayuga Centers in Bronx, New York.  It follows that the harms suffered by W.P.V. and W.P.O., which are the subject of Plaintiffs' claims, stem both from the initial act of their separation, as well as the continued and prolonged separation—a majority of which time was spent by W.P.O. in New York.

**Third**, and relatedly, the Government's arguments incorrectly focus on events in Texas, while ignoring many of the operative events that occurred in New York.  For example, the Government omits that:

- The Government sought out and contracted with Cayuga Centers to take custody of minor children separated from their parents (Dkt. No. 4 at ¶ 86);

- The Government paid Cayuga Centers millions of dollars to maintain custody of minors, like W.P.O., after the Government had separated these minor from their families upon arriving into the United States (Dkt. No. 4 at ¶ 86)

- The Government could have sent W.P.O. to another ORR facility in the Western District of Texas (or another location in Texas), but chose not to (*see, e.g.*,

8

> https://www.acf.hhs.gov/orr/contact-information/state-texas-programs-and-services-locality (identifying ORR facilities located in Texas);

- The Government instead chose to send W.P.O. to the Cayuga Centers located in this District (Dkt. No. 4 at ¶ 82)[3];

- The Government paid the Cayuga Centers to maintain W.P.O. in custody for over a month of the at least two-months of his separation from W.P.V.;

- The Government had the sole authority to decide when to end W.P.O.'s custody at the Cayuga Centers—and by extension, when to end the separation of W.P.O. from W.P.V.;

- The Government acted upon that authority by releasing W.P.O. from the Cayuga Centers on July 1, 2018—over a month after first placing W.P.O. in custody there (Dkt. No. 67 at 7);

- While being held in New York, W.P.O. was not allowed to communicate with his father (Dkt. No. 4 at ¶ 76); and

- W.P.O. emerged severely traumatized after being released from Cayuga Centers in New York: he rarely spoke or expressed emotion, became fearful of showers, refused to eat American food, and developed an aggravated form of asthma (Dkt. No. 4 at ¶¶ 98-101).

The occurrence of these operative events in Plaintiffs' chosen forum readily distinguish the present case from the case—*Larca v. United States*, No. 11 Civ. 3952 (JMF), 2012 WL 6720910

---

[3]     As noted in n. 2, *supra*, it appears that W.P.O. may have also been placed in the care of another family for a portion of the time that he was detained in New York.  Plaintiffs' investigation into these events is ongoing, and Plaintiffs expect to explore the facts and circumstances relating to these events during discovery.

(S.D.N.Y. Dec. 16, 2012)—cited by the Government in support of its transfer request.  Dkt. 67 at

16.   In *Larca*, the Court granted a motion to transfer to the Northern District of Ohio upon

determining that the "alleged misconduct primarily took place in Ohio," one of the defendants was

an Ohio resident, and "little or nothing connect[ed] th[e] case to New York other than Plaintiff's

domicile."  2012 WL 6720910, at *3.  In contrast, the gravamen of Plaintiffs' claims is based on

the months-long separation of W.P.V. and W.P.O.—with a significant portion of that separation

being carried out in New York, when the Government decided to transfer W.P.O. to a facility

owned and operated by the Cayuga Centers in New York.

Thus, even if the occurrence of operative events in the disputed forum is required to accord

weight to Plaintiff's chosen forum, many of the operative events of Plaintiffs' claims did in fact

occur in this District.  On this record, Plaintiffs' chosen forum should be given significant

deference, which in turn counsels against the Government's requested transfer to the Western

District of Texas.  *Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2009)

("A plaintiff's choice of forum is entitled to significant consideration and will not be disturbed

unless other factors weigh strongly in favor of transfer.").

Accordingly, this factor weighs in favor of maintaining this action in this Court.

### B.    Convenience of the Parties Counsels Against a Transfer

"A defendant moving for transfer must show both that the original forum is inconvenient

for it and that the plaintiff would not be substantially inconvenienced by a transfer." *Flood v.

Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 578 (S.D.N.Y. Mar. 27, 2015) (citing *SBAV LP v. Porter

Bancorp, Inc.*, 2013 WL 3467030, at *8 (S.D.N.Y. July 10, 2013)).

Here, the Government has failed to make such a showing.  In particular, the Government

only argues that the Western District of Texas would be "more convenient" for it—not that the

Southern District of New York would be inconvenient for it.  If the Government's convenience argument is premised on the location of the wrongdoing being limited to Texas, that argument fails to appreciate and account for the many operative events that occurred in New York, which are part-and-parcel of the Government-mandated separation that is central to the Plaintiffs' claims (as described in §IV.A, *supra*).  Even the Government's assertion that critical witnesses are located in the Western District of Texas only considers events in Texas, and not the events in New York for which critical witnesses are necessarily located in the Southern District of New York.  *See* §IV.C, *infra*.

Even assuming *arguendo* that a transfer to the Western District of Texas would be "more convenient" for the Government, such a transfer would be significantly inconvenient for the other witnesses in this litigation.  Indeed, as the Government acknowledges, the Western District of Texas is less convenient for the Cayuga Centers, which is located in the Southern District of New York.  Dkt. No. 67 at 14.  The Government speculates that any inconvenience to Cayuga is not "substantial given the limited number of witnesses located in New York."  Dkt. No. 67 at 14.  If this were as true, Cayuga Centers would not be opposing the Government's motion to transfer.  Dkt. No. 60 at 1-2.

Perhaps recognizing this, the Government suggests that any inconvenience suffered by Cayuga Centers can be cured by severing the claims against the Government and Cayuga Centers, such that this Court would retain the claims against Cayuga Centers while the claims against the Government are transferred to the Western District of Texas.  Severance, however, must only be used in exceptional circumstances.  *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 503 (S.D.N.Y. 2013) ("The Federal courts view severance as a procedural device to be employed only in exceptional circumstances.").  Exceptional circumstances warranting a severance are not at play

here, nor has the Government made an adequate showing to that effect.  *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 918 (S.D.N.Y. 2016) ("Courts in this Circuit consider the following factors in determining if severance is appropriate: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.") (citing *Oram*, 979 F. Supp. 2d at 502-03).

In fact, such a forecasted severance would significantly increase the inconvenience and prejudice suffered by Plaintiffs.[4]  For example, the Government's proposed severance would force Plaintiffs to engage in two separate litigations in two separate forums, despite there being an overlap in issues as well as documentary and testimonial evidence in both forums.  And, even if the Cayuga Center is a non-party (e.g., if the Court grants any forthcoming motion to sever and/or upon Plaintiffs and the Cayuga Centers finalizing settlement (*see* n. 1, *supra*)), there is no dispute that witnesses from the Cayuga Centers are relevant and their testimony will be required in this case, as set forth in the section below.

On balance, the convenience of the parties favors maintaining venue in this District.

---

[4]     The Government appears to contend that the location of Plaintiffs' counsel weighs in favor of a transfer.  Dkt. 67 at 14.  Location of counsel is not a consideration in a motion to transfer venue.  *See Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 374 (S.D.N.Y. Feb. 14, 2006) ("the convenience of counsel is not an appropriate factor to consider on a motion to transfer").  Even if counsel's location were a relevant factor, one of Plaintiffs' attorneys is in fact located in this District.

**C.    Relevant Witnesses Will Not Be Inconvenienced From This Suit Continuing in This District, and Appropriate Tools Exist to Obtain Testimony from Non-Party Witness Outside of New York**

"The convenience of both party and nonparty witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. Apr. 13, 2000).

It is undisputed that New York is the most convenient forum for the actions and events related to the Government-sanctioned custody of W.P.O. in New York.  Indeed, documents and witnesses are located at the Cayuga Centers in New York that describe and can speak to the circumstances surrounding W.P.O.'s transfer to and arrival at the Cayuga Centers, his physical and mental condition upon his arrival at the Cayuga Centers and for the duration of his custody at the Cayuga Centers (i.e., for the duration that he continued to be separated from his father), and the circumstances around his subsequent release from Cayuga Centers and into the care of his aunt. And if W.P.O. was also placed with a family during his time in New York (*see* n. 2, *supra*), members of that family would also be relevant witnesses for purposes of Plaintiffs' claims. Government disregards these New York witnesses and the inconvenience to them, if venue is transferred to the Western District of Texas.

For its part, the Government identifies nine potential witnesses from CBP, all of whom are purportedly located in the El Paso Sector (EPT) that consists of stations in New Mexico and Texas. Dkt. No. 67 at 13.  As an initial matter, and as explained in §IV.A, *supra*, the Government applies a myopic view of the underlying actions giving rise to Plaintiffs' claims.  As such, the Government's assertion necessarily omits the critical witnesses who are located in New York. Regardless, even accepting for argument's sake the Government's identification of potentially relevant Government employees, the Government acknowledges that these employees are presumed to be available in any venue, including in the Southern District of New York.  *See Flores*

13

*v. United States*, 142 F. Supp. 3d 279, 287 (E.D.N.Y. 2015) (in denying the Government's motion to transfer venue to Southern District of Texas, finding that: "[l]ocation of [government] witnesses is not decisive since it is assumed that the government can require their participation whenever the case is tried" and "[p]articipation in the trial will not require any of the [government employees] to be away from their duties for a week" because "[o]nly two days should be needed for each witness to travel to New York, testify, and travel back to Texas"); Dkt. No. 67 at 13.   The Government does not—and cannot—argue that it is unable to make its employees available to attend trial in this District.

Despite this presumption of government employees being available as witnesses in any venue, the Government relies on *Ruiz* to suggest that the presumption should not apply here and that a transfer is the more appropriate course of action.  Dkt. No. 67 at 13.  *Ruiz*, however, is readily distinguishable from the present case.  In *Ruiz*, the district court granted a motion to transfer the case to the Eastern District of Virginia, in large part because all events relating to the underlying cause of action happened in Virginia, which is also where all the knowledgeable government employee witnesses were located.  *Ruiz ex rel. E.R. v. United States*, No. 13-CV-1241 KAM SMG, 2014 WL 4662241, at *12 (E.D.N.Y. Sept. 18, 2014).  In contrast, the present case involves actions and events arising ***both*** in Texas and New York, with knowledgeable party and non-party witnesses located in both states.  Indeed, given that the actions and events occurred in at least these two states, attempting to find a single venue that is convenient for all relevant witnesses may not be feasible.

Furthermore, to the extent that the Government is asserting that third party contractors (i.e., non-Government employees or entities) may be relevant to this case (Dkt. No. 67 at 16-17), that assertion lacks merit.  Although the Government states that it has outsourced the management of

14

many detention facilities including the Otero County Processing Center in Chaparral, New Mexico and the Cibola County Correctional Center in Milan, New Mexico to private government contractors, (Dkt. No. 67 at 17), it was Government employees who perpetrated the initial separation of father and son at the Government-run CBP Paso Del Norte Patrol Processing Center. Thus, it is the government's employees—and not third party contractors—who are the most knowledgeable about the initial separation perpetrated in Texas.

Even if third party contractors may be relevant, those entities were, by the Government's own admission, located both in Texas and outside Texas (e.g., in New Mexico). Dkt. No. 67 at 13. Thus, any such third party witness located outside Texas could likely not be compelled to attend trial in the Western District of Texas, just like their attendance at a trial in the Southern District of New York could also not be compelled.[5]

Nevertheless, the Federal Rules of Civil Procedure afford the appropriate process by providing the power to subpoena third party witnesses for depositions "within 100 miles of where the person resides, is employed, or regularly transacts business." Fed. R. Civ. P. 45(c)(1)(a). As such, "the unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 440 (S.D.N.Y. Aug. 16, 2018). Similar accommodations for virtual depositions could be made for both party and non-party witnesses—as is common practice in many cases in 2022. The Government's citation to a 2013 case characterizing virtual depositions as "far from optimal," Dkt. No. 67 at 12, fails to account

---

[5]     Applying the Government's reasoning that third party witnesses outside New York cannot be compelled to attend trial by this Court, the Western District of Texas would similarly be unable to compel participation by the Cayuga Centers in that district.

for the practical change in circumstances in view of the COVID-19 pandemic, which have made virtual depositions a commonplace mode for obtaining testimony.

Therefore, these factors weigh in favor of maintaining venue in the Southern District of New York, or at least are neutral on the issue of venue transfer.

### D.     Location of Relevant Documents and Evidence Does Not Counsel Against a Transfer

The Government contends that there are no "relevant government documents that are located solely in either the Western District of Texas or this District." Dkt. No. 67 at 15. The Government, however, fails to acknowledge documents that are located solely in New York and that are relevant to the circumstances surrounding W.P.O.'s transfer to and arrival at the Cayuga Centers, his physical and mental condition upon his arrival at the Cayuga Centers and for the duration of his custody at the Cayuga Centers (i.e., for the duration that he continued to be separated from his father), and the circumstances around his subsequent release from Cayuga Centers and into the care of his aunt. The Government also ignores documents and other evidence relating to W.P.O.'s placement with a family during his detainment in New York. *See* n. 2, *supra*. As such, given that numerous relevant documents and evidence are located in New York, this factor weighs against a transfer.

### E.     Any Perceived Disparity in the Parties' Relative Means Does Not Warrant a Transfer

"Where a disparity exists between the means of the parties, a court may consider the relative means of the parties in determining venue." *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. Apr. 13, 2000). Here, the Government appears to suggest that this factor weighs in favor of transfer, given that (1) the Government's means are greater than those of Plaintiffs, (2) Plaintiffs' counsel work at a firm with offices in Texas, and (3) Western District of

16

Texas "seems like a less expensive destination for Plaintiffs." Dkt. No. 67 at 17. As explained below, these assertions are flawed and do not weigh in favor of a transfer.

As an initial matter, Plaintiffs' counsel work at Fish & Richardson's offices in Georgia and New York. Thus, to the extent that location of counsel is pertinent to the transfer analysis, the location of Plaintiffs' counsel favor maintaining venue in the Southern District of New York (rather than transferring to the Western District of Texas).

Moreover, for purposes of the present factor, the relevant inquiry is whether a party arguing against a transfer on grounds of disparity in the parties' relative means can show that the transfer would be unduly burdensome on its finances. *See It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010). However, Plaintiffs are not arguing against transfer based on inadequate means or their allegedly more limited means, relative to those of the Government. Therefore, this factor also does not weigh in favor of a transfer.

### F. This Court is Familiar with the Governing Law

Both this Court and the District Court for the Western District of Texas are "equally well-equipped" to decide the federal question claims (stemming from the Federal Tort Claims Act) at issue. *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. Apr. 13, 2000). Moreover, the underlying claims against the Government—of intentional infliction of emotional distress and negligence—stem in substantial part from the actions and events relating to W.P.V. and W.P.O.'s separation, a majority of which occurred while W.P.O. was detained in this District. As such, this Court would likely apply New York tort law to Plaintiffs' claims against the Government. Even if Plaintiffs' common law tort claims against the Government require application of Texas law, such tort-based claims raise simple issues that are not likely to be challenging for a New York court to evaluate. *See Flores*, 142 F. Supp. 3d at 289-290 (in denying a motion to transfer venue

17

to the Southern District of Texas, finding that the knowledge of applicable law factor does not weigh in favor of transfer because "Plaintiff's state law tort claims, which sound in common law negligence, are not complex").  Further still, the Government admits that the New York law governs the claims against the Cayuga Centers.

Therefore, this factor also weighs in favor of maintaining venue in the Southern District of New York (or at the very least, this factor does not weigh in favor of the transfer).

### G.    Trial Efficiency and the Interests of Justice Counsel Against Transfer

Trial efficiency and the interests of justice are best served by maintaining this action in the Southern District of New York. Again, the Government's arguments that "the primary conduct giving rise to the claims allegedly occurred and related witnesses are located" in the Western District of Texas, Dkt. No. 67 at 19, ignore the Government's choice to send W.P.O. to the Southern District of New York, and W.P.O.'s forced custody at the Government-funded Cayuga Centers, which is part and parcel of the same tortious act stemming from the Government's separation of Plaintiffs.  As explained above, testimony and documents related to W.P.O.'s detention in New York are integral, not only to Plaintiffs' claims against Cayuga Centers, but also to Plaintiffs' claims against the Government.

The Government cites three cases to support its argument that trial efficiency and the interests of justice weigh in favor of a venue transfer, but each are distinguishable from the instant case. ***First***, in *Ruiz ex rel. E.R.* ***all*** of the events happened at the Washington Dulles International Airport and a nearby hotel for a total of 18 days.  *Ruiz ex rel. E.R.*, 2014 WL 4662241, at *2-3. ***Second***, in *Larca*, the Court granted a motion to transfer to the Northern District of Ohio where "virtually ***all of the witnesses, documents, and events critical to the litigation are in Ohio*** and were in Ohio at the time of the alleged misdiagnosis and mistreatment" because the dispute hinged

on whether an inmate suffered medical misdiagnosis and mistreatment while in Ohio.  2012 WL 6720910, at *3 (emphasis added).  ***Third***, in *Jones v. United States*, the district court granted a motion to transfer to the Southern District of Georgia because "***all*** of the legally operative events took place within the Southern District of Georgia."  No. 02 Civ. 1017 (JG), 2002 WL 2003191, at *3 (E.D.N.Y. Aug. 26, 2002) (emphasis added).

In contrast, and as explained above, witnesses, documents, and events critical to the litigation are in New York (as well as in Texas and potentially in New Mexico).  Specifically, the Government sent W.P.O. to New York to be detained for an indefinite term that ultimately lasted more than a month.  Dkt. No. 67 at 7; Dkt. No. 4 at ¶ 89.  Moreover, the Government also detained W.P.V. in multiple different states (i.e., at least Texas and New Mexico) before he was deported.  Dkt. No. 67 at 7-8.  On these facts, trial efficiency and interests of justice counsel against a transfer of venue to the Western District of Texas.

In summary, Plaintiffs' chosen forum of the Southern District of New York is entitled to significant deference, which is only further confirmed upon a proper evaluation of the convenience and fairness factors that are addressed above.  On balance, trial efficiency, convenience, and the interests of justice weigh in favor of maintaining the present case in Plaintiffs' chosen forum.  The Government's arguments to the contrary fall well short of its clear and convincing burden.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny the Government's motion to transfer and maintain this action in Plaintiffs' choice of forum, the Southern District of New York.

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated: July 22, 2022

*/s/ Aamir A. Kazi*

By:   Aamir A. Kazi (Admitted *pro hac vice*)
      GA Bar No. 104235
      Karan Jhurani (Admitted *pro hac vice*)
      GA Bar No. 290326
      Fish & Richardson P.C.
      1180 Peachtree Street NE, 21st Floor
      Atlanta, GA 30309
      Telephone: (404) 892-5005
      Facsimile: (404) 892-5002
      E-mail:  kazi@fr.com
              jhurani@fr.com

      Caitlin M. Dean (Admitted *pro hac vice*)
      TX Bar No. 24109797
      Fish & Richardson P.C.
      7 Times Square, 20th Floor
      New York, NY 10036
      Telephone: (212) 765-5070
      Facsimile: (212) 258-2291
      E-mail: cdean@fr.com

      ***Attorneys for Plaintiffs***

20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 22, 2022, a true and correct copy of the

foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system,

which will send notification of such filing to all counsel of record.

Dated: July 22, 2022                          <u>      */s/ Aamir A. Kazi*          </u>
                                                            Aamir A. Kazi